UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER LYNN RODGERS,<br><br>                        Plaintiff,<br><br>v.<br><br>STATER BROS. MARKETS,<br><br>                       Defendant. | Case No.:  16cv2614-MMA (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 19] |

On October 20, 2016, Plaintiff Jennifer Lynn Rodgers ("Plaintiff") filed her Complaint against Stater Bros. Markets ("Defendant").  *See* Doc. No. 1 ("Compl."). Plaintiff alleges claims for: (1) negligence; and (2) premises liability.  *See id.*  Defendant moves for summary judgment on both of Plaintiff's claims, or, in the alternative, partial summary judgment.  *See* Doc. No. 19 ("MSJ").  Plaintiff filed an opposition [Doc. No. 22 ("Oppo.")], to which Defendant replied [Doc. No. 23 ("Reply")].  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  Doc. No. 21 at 2.  For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment.

## BACKGROUND[1]

On September 7, 2015, at approximately 20:05:25, Plaintiff slipped on a puddle of
water and ice on the floor and fell in one of Defendant's stores.  Doc. No. 19-3, Exhibit 2;
Doc. No. 19-2 at 2; Doc. No. 22-2 at 2.[2]  The fall happened at the East entry of the store
near the ice house.  Doc. No. 19-3, Exhibit 2; Doc. No. 19-2 at 2; Doc. No. 19-6
("Belcher Decl.") at ¶ 13.  A time-stamped closed circuit television monitoring system
("CCTV") recorded the fall.

CCTV footage shows that from 19:44:40 to 19:44:44, Courtesy Clerk Wilson
("Clerk Wilson") inspected and swept the East entry area.  Doc. No. 19-3, Exhibit 4.  The
5th Key Manager on duty at the time, James Belcher ("Belcher") had been in the East
entry area approximately fourteen minutes after Clerk Wilson, from 19:58:19 to
20:00:58, and noted that no ice was on the floor.  Belcher Decl. at ¶¶ 2, 9.  Roughly
thirteen seconds later, at 20:01:10, two customers are seen near the ice house.  Doc. No.
19-3, Exhibit 3.  One customer grabs a bag of ice from the ice house and spills its
contents onto the mat in front of the ice house at 20:01:12-20:01:13.  *Id.*  The customers
kick the ice they spilled around the floor and then leave at 20:01:52.  *Id.*  The customers
are not seen talking to any of Defendant's employees.  *Id.*  Approximately four minutes
later, at 20:05:21-20:05:25, Plaintiff is seen pushing a shopping cart past the ice house,
slipping, and falling to the ground.  Doc. No. 19-3, Exhibit 2.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or
the part of each claim or defense—on which summary judgment is sought.  The Court
shall grant summary judgment if the movant shows that there is no genuine dispute as to

[1] These material facts are taken from the parties' separate statements of undisputed facts and pertinent
cited exhibits.  Facts that are immaterial for purposes of resolving the current motion are not included in
this recitation.
[2] All pincite page references refer to the automatically generated ECF page number, not the page
number in the original document.

any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Id.*

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008), cert. denied, 555 U.S. 827 (2008) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

To establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages.  *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001).  The elements of premises liability on a negligent theory are the same.  *Id.*  Defendant asserts that it did not breach its duty of care to Plaintiff because: (1) the dangerous condition is open and obvious; and (2) it did not have actual or constructive knowledge of the dangerous condition.  MSJ at 8-12.  Plaintiff counters that Defendant breached its duty of care to Plaintiff because: (1) the dangerous condition was not open and obvious; (2) it created the dangerous condition; and (3) it had actual and/or constructive knowledge of the dangerous condition.  *See* Oppo.

//

//

1    ### 1.  *Open and Obvious Dangerous Condition*

2         Defendant argues that it had no duty to warn Plaintiff of the dangerous condition

3    because it was open and obvious.  MSJ at 12.  A store owner is "not liable for injury to

4    the invitee which results from a condition that is obvious or should have been observed

5    by the invitee in the exercise of reasonable care."  *Holcombe v. Burns*, 183 Cal. App. 2d

6    811, 815 (Ct. App. 1960).  "[T]he trier of the fact must determine any conflict as to

7    whether or not the danger was obvious to the invitee."  *Beauchamp v. Los Gatos Golf*

8    *Course*, 273 Cal. App. 2d 20, 36 (Ct. App. 1969).

9         Defendant states that CCTV footage "clearly reveals a significant amount of solid

10   white ice visible on the dark mat as Plaintiff walks towards it and the exit."  MSJ at 12.

11   Plaintiff opposes, arguing that she fell "3-4 feet away from [safety mat]."  Oppo. at 17.

12   She contends that "[t]he ice on the floor mat is more visible because of the color

13   contrast," but because the slip occurred a few feet away from the mat and because there is

14   a "lack of color contrast between the tile floor and the ice/water" the ice and water were

15   not obvious.  *Id.*  Additionally, at her deposition, Plaintiff stated that she did not see ice,

16   water, or anything that may have caused her to slip on the floor.  Doc. No. 22-5

17   ("Rodgers Depo.") at 3-4.  After Plaintiff fell, she explained that the water was "clear"

18   and could not recall if the water was shiny or reflecting any light.  *Id.* at 5-6.

19        Construing these facts in favor of Plaintiff, a reasonable trier of fact could

20   conclude that the danger was not open and obvious.  Accordingly, the Court cannot find

21   as a matter of law that there is an absence of a genuine issue of material fact as to

22   whether the condition was open and obvious, and summary judgment cannot be granted

23   on this ground.

24   ### 2.  *Duty and Breach*

25        In California, a store owner owes a duty to its patrons to "exercise reasonable care

26   in keeping the premises reasonably safe."  *Ortega*, 26 Cal. 4th at 1205.  A store owner

27   exercises ordinary care by "making reasonable inspections of the portions of the premises

28   open to customers, and the care required is commensurate with the risks involved."  *Id.*

(citing *Bridgman v. Safeway Stores, Inc.*, 53 Cal. 2d 443, 448 (1960)).  In a self-service grocery store where customers may take goods off the shelves, the owner may have to "take greater precautions and make more frequent inspections" to protect against the creation of dangerous conditions.  *Id.* (quoting *Bridgman*, 53 Cal. 2d at 448).  The "basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent [person] acting under the same circumstances." *Id.* (quoting *Bridgman*, 53 Cal. 2d at 448).

### a.    Whether Defendant Created the Dangerous Condition

"Where the dangerous or defective condition of the property which causes the injury has been created by reason of negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition.  Under such circumstances knowledge thereof is imputed to him." *Hatfield v. Levy Bros.*, 18 Cal. 2d 798, 806 (1941); *Getchell v. Rogers Jewelry*, 203 Cal. App. 4th 381, 386 (Ct. App. 2012).

Plaintiff argues that Defendant's knowledge can be imputed because it created the dangerous condition.  Oppo. at 12-19.  Specifically, Plaintiff argues Defendant created the dangerous condition due to two of its policies, the location of the ice house, the size of the safety mats in front of the ice house, the type of flooring used, and because shopping carts with flowers in them could have contributed to the water that Plaintiff slipped on.  *Id.*

### 1.    Defendant's Mode of Operation

Plaintiff argues that Defendant's knowledge can be imputed because: (1) Defendant has a policy of allowing customers to handle ice bags; (2) Defendant's inspection and floor sweep policy is inadequate; (3) the location of the ice house is unreasonable; (4) the safety mats in front of the ice house are inadequate; and (5) the floor itself is an unsafe condition.  Oppo. at 13-19.  Thus, Plaintiff appears to be invoking

the "mode of operation" rule, which looks to a business's choice of a particular mode of operation and not the events surrounding the plaintiff's accident. *See Contreras v. Wal-Mart Stores, Inc.*, No. SACV 14-0973-DOC (ANx), 2015 WL 12656938, at *4 (C.D. Cal. May 8, 2015). Each of these "modes of operation" arguments are supported by Plaintiff's expert's report and declaration, to which Defendant raises several objections and argues should be excluded. *Id.*; *see also* Reply at 3-4.

> i. *Expert Report and Declaration*

Plaintiff's safety engineering expert, Brad Avrit ("Avrit"), prepared an expert report and declaration relating to a site inspection at Defendant's store. Oppo. at 13. As indicated previously, Avrit's report identifies several breaches of the duty of care owed to Plaintiff. *Id.* at 13-19. Defendant objects to Avrit's reports and declaration, along with the exhibits attached to those documents. Doc. No. 23-2.

First, Defendant asserts that "Avrit's presented evidence, declaration, reports[], findings, opinions and/or conclusions should be precluded in their entirety because they are based on an illegal, unnoticed and unauthorized inspection of the subject premises controlled by Stater Bros." Reply at 3.

Federal Rule of Civil Procedure 34(a)(2) provides:

> A party may serve on any other party a request within the scope of Rule 26(b): . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2). The rule mandates that a request be served on the opponent seeking permission to enter the premises. *Id.*

Here, Defendant asserts that Plaintiff did not request permission to enter and inspect the premises, and, therefore, all of Avrit's evidence, declaration, reports, findings, opinions and/or conclusions should be excluded. Reply at 3. Defendant does not present any legal support for its argument that because Plaintiff did not get permission to investigate pursuant to Rule 34(a)(2), the Court must exclude the evidence and testimony

derived from those inspections.  *See* Reply at 3-4.  Defendant's argument presupposes that failure to comply with Rule 34(a)(2) results in the exclusion of any evidence gathered.  *See id.*  Absent such legal authority, the Court is hesitant to preclude Avrit's report and declaration.

Additionally, the Court finds Defendant's objection, which is ultimately a discovery dispute, untimely.  Magistrate Judge Mitchell D. Dembin's Civil Chambers Rules provide that "[a]ny motion related to discovery disputes must be filed no later than thirty (30) days after the date upon which the event giving rise to the dispute occurred." Civ. Chambers R. C.2.  The site inspection was conducted on December 14, 2017, and the report was served upon Defendant on December 18, 2017.  *See* Reply at 3; Doc. No. 17 at 1.  Accordingly, it has been more than thirty days since the discovery dispute arose and Defendant's argument is untimely.  *See* Civ. Chambers R. C.2.

For the reasons stated herein, the Court **OVERRULES** Defendant's objection regarding Avrit's unauthorized site inspection.

Defendant also objects to nine of Avrit's opinions "because they are based entirely upon [i]nadmissible [h]earsay, [l]ack [f]oundation, [s]peculations, [l]ack of [f]actual [b]asis for [e]xpert [o]pinion and/or [s]peculation: FRCP 56(c)(4); FRE 702(b); FRE 703; FRE 705 and not admissible[.]"[3]  Doc. No. 23-2 at 2-3.  Defendant contends that Avrit's opinions "are based on information he claims he received from testing he did not conduct first hand, and based on several articles and treatises attached to Avrit's Declaration" and that Avrit's expert report and rebuttal report are inadmissible hearsay.  *Id.* at 4.  However, Defendant does not explain why any of Avrit's opinions are based on insufficient facts or

---

[3] Specifically, it objects to the following opinions: (1) the subject floor was in an unsafe condition; (2) Defendant created the unsafe condition; (3) the use of mats at the time of the incident was inadequate; (4) the water leaked from multiple shopping carts with flowers; (5) the cost to eliminate the unsafe condition is minimal; (6) the location of the icehouse was below industry standards; (7) Defendant should have used carpet or slip resistant vinyl tiles; (8) Defendant should have more floor sweeps like the Gleason ESP System; and (9) it is common procedure in stores to not have patrons handling ice. Doc. No. 23-2 at 3-4.

data, or which facts or data that Avrit had been made aware of or personally observed would not be reasonably relied upon by experts in the field. *See id.*; *see also* Fed. R. Evid. 702(b); Fed. R. Evid. 703. Moreover, "facts or data relied upon by an expert "need not be admissible for the opinion to be admitted" and experts may state opinions and give reasons for those opinions without first testifying to the underlying facts or data. Fed. R. Evid. 703; Fed. R. Evid. 705. In sum, Defendant provides insufficient information for the Court to address each of its objections. Accordingly, the Court **OVERRULES** all nine of Defendant's objections to Avrit's opinions.

### ii.    Mode of Operation

As discussed previously, Plaintiff contends that Defendant's knowledge can be imputed because Defendant's policies with respect to handling of ice bags and floor sweeps are unreasonable, the ice house location is unreasonable, the safety mats in the area are inadequate, and Defendant's floors are inherently dangerous and unreasonably slippery when wet, which invoke the "mode of operation" rule.[4]  Oppo. at 13-19.

"The 'mode-of-operation' rule looks to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident. Under the rule, the plaintiff is not required to prove notice if the proprietor could reasonably anticipate that hazardous conditions would regularly arise." *Moore v. Wal-Mart Stores, Inc.*, 111 Cal. App. 4th 472, 478 (Ct. App. 2003). However, in California, "a store owner's choice of a particular 'mode of operation' does not eliminate a slip-and-fall plaintiff's burden of proving the owner had knowledge of the dangerous condition that caused the accident." *Id.* at 479.

---

[4] Plaintiff argues that these situations show that Defendant created the dangerous condition. Oppo. at 13. The Court assumes Plaintiff is attempting to assert that she need not prove Defendant's notice or knowledge of the dangerous condition where Defendant created the condition. *See Sanders v. MacFarlane's Candies*, 119 Cal. App. 2d 497, 501 (Ct. App. 1953). However, this rule applies to cases where a store employee has done something rendering a situation dangerous, for example waxing or polishing a floor in a way that left it slippery. *See id.*; *see also Hatfield*, 18 Cal. 2d at 807. Here, Plaintiff argues that Defendant's particular operation of its policies, choice of flooring, size of its safety mats, and location of the ice house amounts to a breach of duty of care even without constructive or actual knowledge. Oppo. at 13-19.

Therefore, Plaintiff must still prove that the owner had knowledge of the dangerous condition that caused the accident. *Id.* To find otherwise would essentially impose "strict liability for slip-and-fall injuries." *Id.*

Thus, under the mode of operation rule, the question in this case would be whether Defendant could have reasonably anticipated that slip and falls from spilled ice or water would regularly arise from Defendant's policies, the location of the ice house, the safety mats, and the floor itself. The Court notes that Plaintiff provides absolutely no legal authority for these arguments and relies solely on her expert's opinion to support her argument, without providing any specific evidence as to actual or constructive knowledge. *See* Oppo. at 13-19.

### a. Defendant's Policies

Plaintiff asserts that Defendant created the hazardous condition by having a policy that allows customers to handle ice bags and a policy of conducting floor sweeps every sixty minutes. Oppo. at 18-19. In support, Plaintiff cites to Avrit's declaration. *Id.* The portions of Avrit's declaration regarding these policies are derived from his rebuttal expert report. *See* Doc. No. 22-7 ("Avrit Decl."), Exhibit D ("Avrit Rebuttal"). Avrit declares that "[i]t is a common procedure in stores to not have patrons handling ice bags but instead having clerks getting ice bags from the machines as they are purchased. Because breakage is likely and ice spills being as instantly dangerous as they are, having employees handle the ice eliminates the possibility of bags breaking in the store and employees not knowing about it. The industry standard at a grocery store would require such an approach of having the clerks handle ice bags." Avrit Decl. at ¶ 20. Avrit provides no support whatsoever for his opinion regarding policies of customers handling ice bags and industry standards. *See id.*; Avrit Rebuttal at 2. Moreover, Plaintiff and Avrit do not establish whether Defendant has a policy with respect to ice bags. *See* Oppo; *see also* Avrit Decl.; Avrit Rebuttal.

Avrit also declares "[f]loor sweeps more frequently than every 20 minutes are common in supermarkets" and hourly sweeps are "below the industry standard for safety

of what would be considered reasonable." Avrit Decl. at ¶ 19. In support, Avrit explains that the "Gleason ESP system" is commonly used to enable effective floor sweeps and timing of store sweeps and that large grocery store chains like Northgate and Whole Foods utilize this system. *Id.* However, the documents referred to do not indicate that floor sweeps more frequently than every 20 minutes are common in supermarkets. *See* Avrit Decl., Exhibit J ("Gleason Docs."). In fact, the Gleason ESP documents' "quick tips" suggest walks be done "every 30 minutes," and the "how to perform a safety inspection walk" section suggests that "[e]ach scheduled hour . . . the assigned associate [begins a safety inspection walk.]" *Id.* at 2, 8. Additionally, Avrit does not provide any support establishing the industry standard with respect to floor sweeps. *See* Avrit Decl.; Gleason Docs.; Avrit Rebuttal.

Moreover, while Plaintiff contends that "hourly" floor sweeps are inadequate, Plaintiff fails to cite to evidence proving the sweeps at Defendant's store are only conducted hourly. Oppo. at 18. For example, the 5th Key Manager declares that "[t]he floor maintenance program" requires "the store floors to be swept or mopped and inspected at least every 60 minutes." Belcher Decl. at ¶ 9. In addition, "[a]ll employees are trained to inspect the floors continuously throughout the day as they walk through the store performing their duties," and "all managers . . . are required to walk and inspect the store floors every 45-60 minutes . . . ." *Id.*; *see* Doc. No. 19-3, Exhibit 6 at 58, 65.[5] On the day of the incident, Clerk Wilson conducted a floor sweep sixteen minutes prior to the ice spill and twenty minutes prior to Plaintiff's fall, and the 5th Key Manager inspected that same area roughly thirteen seconds prior to the spill and four minutes prior to Plaintiff's fall – evincing that the two inspections took place within sixteen minutes of

---

[5] Plaintiff's evidentiary objection to Defendant's "Courtesy Clerk Policies and Procedures" is **OVERRULED** because Defendant's failure to disclose the policies and procedures was harmless in light of the 5th Key Manager's declaration, which re-iterates the sweep policy for courtesy clerks and store managers. Fed. R. Civ. P. 37(c)(1) (indicating that failure to disclose or supplement information results in that party's inability to use that information to supply evidence on a motion "unless the failure . . . is harmless"); *see* Belcher Decl. at ¶ 9; *see also* Doc. No. 19-3, Exhibit 6 at 58, 65.

16cv2614-MMA (MDD)

each other. Belcher Decl. at ¶¶ 9-11; Doc. No. 19-3, Exhibits 2-4. Thus, the Court finds that Plaintiff has not raised a triable issue of material fact that Defendant's floor sweep policy created the dangerous condition.

In any event, Plaintiff points to no evidence nor even an inference that suggests that Defendant could have reasonably anticipated or had knowledge that slip-and-falls from spilled ice or water would regularly arise from Defendant's policies of customers handling ice bags or hourly floor sweeps. *See* Oppo. For example, Plaintiff has not shown that there have been previous slip-and-fall incidents due to spilled ice or water on the floor giving rise to constructive knowledge.[6] *See* Doc. No. 22-4 at 11, 21-22; Oppo. at 8 (stating that Defendant "has not denied that [incidents of people slipping on the wet floor due to spilled ice/water] has occurred"). Neither has Plaintiff pointed to evidence that Defendant actually knew its policies would give rise to frequent slip-and-falls resulting from spilled ice or water. *See* Oppo.

### b. Location of the Ice House

Plaintiff also contends that the ice house "should be in a location where it can be constantly monitored by a cashier or other management employee." Oppo. at 16. According to Plaintiff and based on Avrit's expert opinion, "the choice of the location of the ice house . . . was below industry standards . . . and that failure [to locate the ice house in an area where it can be constantly monitored] caused this incident to occur." *Id.* Plaintiff and Avrit do not establish what the industry standard is for the location of ice houses or similar grocery store fixtures, such as freezers or refrigerators. *See id.*; *see also* Avrit Report; Avrit Decl.; Avrit Rebuttal. Additionally, Plaintiff provides no evidence suggesting that ice spills occur regularly, such that Defendant should have anticipated that the ice house's location would regularly result in slip-and-falls. *See* Oppo. at 8. Nor

---

[6] The Court is unpersuaded that Defendant's objection to interrogatories seeking information about prior slip-and-fall incidents due to spilled ice/water at *any* Stater Bros. Markets location creates a "fair inference . . . that there have been such incidents." Oppo. at 8.

16cv2614-MMA (MDD)

does Plaintiff provide any evidence of actual knowledge that the location of the ice house created a dangerous condition. *See* Oppo. As such, Plaintiff has failed to establish a triable issue of material fact that the location of the ice house created the dangerous condition or that Defendant had knowledge of the dangerous condition.

c. <u>Safety Mats</u>

Plaintiff further contends that "[t]he use of the mats at the time of the incident was inadequate to deal with foreseeable and inevitable spills." Oppo. at 15. Plaintiff argues that "[i]t is inevitable that spills will occur as people remove ice from the freezer and put it into their cart. Knowing this, a larger mat should have been used to create a larger anti-slip area around the ice box." *Id.* Plaintiff further asserts that because this area is also a high traffic entrance area, it is foreseeable that contaminants such as water would be present on the floor and that Defendant should have provided larger safety mats and "employed a higher level of vigilance" near the area. *Id.* Plaintiff states that industry standards require 90 square foot mats to be placed near entrances. *Id.*

However, the threat of contaminants on a floor near an entrance is different than the threat of contaminants on a floor near an ice house. Plaintiff concedes that the threat of foreseeable contaminants in an entrance area arise from contaminants "being tracked from outside the store." *Id.* Here, it is undisputed that the contaminant on the floor did not come from outside the store. Plaintiff provides absolutely no evidence that mats of a particular size should be utilized in front of particular displays or ice houses. *See id.* Moreover, while Plaintiff asserts that it is "inevitable that spills will occur as people remove ice from the freezer and put it into their cart," Plaintiff does not contend that spills occurring "3-4 feet away from [the safety mat]" are foreseeable. *See id.* at 15, 17. Again, Plaintiff fails to establish a triable issue of material fact that the safety mat created the dangerous condition or that Defendant could reasonably anticipate that slip-and-falls would regularly occur due to the size of the safety mat. Plaintiff cites to absolutely no evidence that Defendant knew or should have known that the size of the safety mat in

front of the ice house would regularly result in a slip-and-fall from spilled ice or water. *See* Oppo. at 15, 19.

### d. Dangerous Floor

Similarly, Plaintiff has not provided any evidence or an inference suggesting that Defendant could have reasonably anticipated or had knowledge that slip-and-falls due to spilled ice or water would regularly arise from Defendant's smooth polished vinyl tile flooring. *See* Oppo. Based on Avrit's report, Plaintiff contends that the smooth polished vinyl tile in Defendant's store is "slippery and dangerous when wet with water." Oppo. at 14; Doc. No. 22-10 ("Avrit Report") at 2-3. Avrit's declaration references the American National Standard A1264.2 to show the "industry standards for a floor surface to be considered sufficiently slip resistant for typical pedestrian use is a [slip index] minimum of 0.50."[7] Avrit Decl. at ¶ 10. Avrit conducted a slip resistance test of Defendant's store and found that the floor under wet conditions "resulted in a slip index reading as low as 0.25," which in Avrit's view is an unreasonably high risk. Avrit Report at 3. Avrit also set forth his views on the foreseeability of frequent spills on the store's floor. He stated that "it is foreseeable that liquid spills could be present on the floor surface at any time during normal store operations, as Stater Bros. Markets sells numerous types of liquid products and ice and does not prohibit customers from handling the products or drinking in the store." Avrit Decl. at ¶ 11. Avrit concluded that "the smooth vinyl tile surface was inherently improper for the subject area . . . ." *Id.* He further opined that the unsafe condition could have been avoided by installing a slip resistant floor or providing larger safety mats. *Id.* at ¶¶ 15, 18, 21.

Here, Plaintiff has not presented evidence sufficient to establish that the floor itself was a "dangerous condition." Plaintiff does not contend the floor was unreasonably

---

[7] The Court has reviewed the attached American National Standard A1264.2 attached to Avrit's declaration and notes that it does not indicate floor surfaces are considered sufficiently slip resistant if they have a slip index level of 0.50. *See* Doc. No. 22-14 ("ANSI 1264.2").

13

slippery at all times, even when dry. Instead, Plaintiff's theory is that the floor itself was a dangerous condition because it is foreseeable that water and/or ice will spill on the floor, and the floor when wet is unreasonably slippery. *See* Oppo. at 14-15, 18. However, Plaintiff has not pointed to any evidence that ice and water spills frequently occur on the floors. *See* Oppo. at 8. Even if the floor were unreasonably dangerous such that it constituted an ongoing hazard, Plaintiff has not met her burden of showing knowledge. *Moore*, 111 Cal. App. 4th at 479 ("a store owner's choice of a particular 'mode of operation' does not eliminate a slip-and-fall plaintiff's burden of proving the owner had knowledge of the dangerous condition that caused the accident"). Plaintiff lacks any specific evidence regarding how often people actually fell in the store to indicate the floors were not reasonably safe. *See* Oppo. at 8. Specifically, Plaintiff has no evidence that any more than one fall took place, which is insufficient to show a triable issue of fact. *Id.* "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. AMTRAK.*, 331 F.3d 1074, 1078 (9th Cir. 2003). Additionally, Plaintiff does not argue that Defendant had actual knowledge that the floors were a dangerous condition. *See* Oppo. Accordingly, Plaintiff has not shown that there is a triable issue of material fact as to her slippery floor theory. *See Contreras*, 2015 WL 12656938, at *4-6.

####        2.        *Source of the Water*

Plaintiff also argues that Defendant created the dangerous condition by placing carts filled with flowers that could have contributed to the water Plaintiff slipped on near the East entrance. Oppo. at 12-13. In support, Plaintiff points to her deposition testimony, where she stated that she was "soaking wet," that "it felt like it was more water than ice," that the entire lower part of her pants, the side of her pants, and the back of her pants were wet, and that the puddle of water was "very large," and roughly three feet long. Rodgers Depo. at 33-36. Further, Plaintiff points to CCTV footage and pictures derived from that footage, which show what appear to be shopping carts containing flowers near the area where Plaintiff fell. Doc. No. 19-3, Exhibits 2-3. Even

further, Plaintiff contends the CCTV footage shows the flower carts were moved immediately after Plaintiff fell.[8]  Oppo. at 13.  Based on this evidence, Plaintiff contends "[a] reasonable inference from this is that the water also came from the nearby cart of flowers."  *Id.* at 12.

Plaintiff's opposition omits relevant and important portions of her deposition testimony.  *See* Rodgers Depo.  While Plaintiff stated that "initially" she thought the water could have come from the carts with flowers, she stated that after the fall she "saw ice on the floor" and that her "soaking wet" pants were "cold."  *Id.* at 3, 7.  Plaintiff also stated that she "did hit ice that was on the floor," but "didn't really notice the ice until [she] started to get up," that she "put [her] hand on a piece of it," and was "kneeling on ice."  *Id.* at 3, 7.  In addition, Plaintiff stated that the puddle of water was "spreading towards the door to leave.  And it also was spreading back towards the aisle that [she] had come down," indicating that the water did not come from the carts of flowers which were located behind Plaintiff on her right side.  *Id.* at 5; *see* Doc. No. 19-3, Exhibit 2 (showing pictures of Plaintiff's fall and the location of the carts with flowers).  Additionally, CCTV footage shows two customers approach the ice house, spill a bag of ice on the mat in front of the ice house and tile surrounding the mat, kick the ice around in the area Plaintiff fell, and then leave the store without notifying any employee of the spill.  *See* Doc. No. 19-3, Exhibit 2 at 16, Exhibit 3 at 37.

Plaintiff's deposition testimony that she "initially" thought the carts filled with flowers was the source of the hazardous water is a complete assumption, unsupported by any evidence.  *See* Rodgers Depo.  Plaintiff's self-serving speculation is insufficient to create a genuine issue of fact for trial.  *Nilsson v. City of Mesa*, 503 F.3d 947, 955 (9th Cir. 2007) ("rank speculation" insufficient to create a genuine issue of fact).  As a result,

---

[8] Plaintiff does not cite to any evidence showing the flower carts were moved after Plaintiff fell and the Court could not find any evidence provided by either party supporting Plaintiff's statement.  *See* Oppo. at 13.

16cv2614-MMA (MDD)

Plaintiff fails to raise a triable issue of material fact as to the source of the water and, therefore, also fails to raise a triable issue of material fact as to whether Defendant created the dangerous condition.

### b.    Actual or Constructive Knowledge

Because the Court finds no genuine issue of triable fact exists as to whether Defendant created the dangerous condition and that knowledge cannot be imputed, the Court turns to whether Defendant had actual or constructive knowledge of the water and ice on the floor.

"Where the dangerous condition is brought about by . . . third persons . . . which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises." *Hatfield*, 18 Cal. 2d at 806; *Ortega*, 26 Cal. 4th at 1206.  A store owner is not an insurer of the safety of its patrons.  *Moore*, 111 Cal. App. 4th at 476 (citing *Ortega*, 26 Cal. 4th at 1205).  As such, "the owner's actual or constructive knowledge of the dangerous condition is a key to establishing its liability." *Ortega*, 26 Cal. 4th at 1206.  In other words, the owner must "have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition" to be liable for negligence and premises liability.  *Id.* (quoting *Hatfield*, 18 Cal. 2d at 806).

With respect to actual knowledge, Defendant asserts that "there is no evidence to suggest Stater Bros. had actual notice of the ice on the floor."  MSJ at 9.  Plaintiff counters that Defendant did have actual notice because "there was a surveillance video that recorded the spill taking place" and, therefore, it is reasonable to infer that the incident was observed in real-time.  Oppo. at 11.  In support, Plaintiff cites to *Aguilar v. Wal Mart Stores, Inc.*, which states in a footnote that "[t]he Court also considers the undisputed video footage as subject to a reasonable inference that Wal-Mart had notice of the sanitation wipe; it is reasonably possible that Wal-Mart staff observed the child

dropping the wipe in live time" even though no Wal-Mart employees were present from the time the child dropped the sanitation wipe to the time of plaintiff's fall. *Aguilar v. Wal Mart Stores, Inc.*, CV 16-04151-BRO (JPRx), 2017 WL 6940511, at *3-6, n.5 (C.D. Cal. Aug. 30, 2017).

While the CCTV footage of the incident was playing in real-time in the back of the store, a reasonable inference cannot be made that Defendant had actual knowledge of the incident. In response to Plaintiff's first set of interrogatories, D[efendant] asserts that it is "unaware of 'anyone' watching the video-surveillance in real-time, and provides that there is no employee of D[efendant] who is dedicated to doing so." Doc. No. 22-4 at 6. Defendant further stated that there was no separate facility where the surveillance footage was being monitored on the day of the incident. *Id.* at 9. Further, the parties agree that none of Defendant's employees were physically present or physically witnessed the incident.

Defendant was not required to submit a declaration from every store employee working on the date of the incident. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'"). In opposing summary judgment, Plaintiff did not point to evidence that some other store employee had actual notice of the spill; rather Plaintiff points to the fact that CCTV footage was being played in real-time in the back of the store. Oppo. at 11-12. However, the mere existence of CCTV footage being played in real-time in a back room of the store is insufficient for the Court to reasonably infer actual knowledge where Defendant has stated that it is unaware of any person watching the footage at the time of the incident and no employee was responsible for watching the footage in live time. *See* Doc. No. 22-4 at 6, 9. In other words, the mere fact that the incident was captured on CCTV footage and was playing in real-time in the back of the store does not establish a dispute of fact exists as to whether Defendant had actual notice of the water and ice on the floor. *See Simril v. Wal-Mart Stores, Inc.*, CV 16-04564-AB (PLAx), 2017 WL

2999031, at *2 (C.D. Cal. June 9, 2017) (stating that the video evidence conclusively shows that no employees were in the immediate vicinity and, therefore, the defendant did not have actual knowledge). To find otherwise would essentially impose strict liability on businesses with surveillance cameras.

Where a plaintiff cannot establish actual notice of a dangerous condition, a plaintiff can establish constructive notice by circumstantial evidence. *Ortega*, 26 Cal. 4th at 1206. As such, the plaintiff can establish constructive knowledge "where evidence suggests that the dangerous condition was present for a sufficient period of time to charge the owner with constructive knowledge of its existence." *Id.* Whether a dangerous condition existed long enough for a reasonably prudent person to have discovered it is ordinarily a question of fact for the jury. *Id.* at 1207. However, if the evidence does not support a reasonable inference that the dangerous condition existed long enough to be discovered in the exercise of reasonable care, a court may resolve the issue of notice as a matter of law. *Id.* As a result, a business owner is entitled to summary judgment if the plaintiff cannot show that the dangerous condition existed for at least a sufficient time to be discovered by ordinary care and inspection.[9] *Id.*

Here, the undisputed evidence establishes that the water was on the floor for roughly four minutes. Doc. No. 19-3, Exhibits 2-3; Belcher Decl. at ¶ 13. Thus, the issue is whether four minutes is a sufficient amount of time for Defendant to have discovered the spilled ice or water by ordinary care and inspection. Plaintiff argues four minutes is sufficient because the Central District of California has held that twenty-four seconds was sufficient to establish constructive knowledge. *See* Oppo. at 4-9 (citing *Aguilar*, 2017 WL 6940511, at *3-6).

---

[9] As a result, Plaintiff's argument that summary judgment is not proper because it is solely up to the jury to decide whether a dangerous condition existed long enough for a reasonably prudent person to have discovered it is inaccurate. *See* Oppo. at 9-11.

In *Aguila*, the plaintiff slipped and fell on a sanitation wipe that a child had dropped twenty-four seconds earlier. *Aguilar*, 2017 WL 6940511, at *3. There, the Court found that the defendant had constructive knowledge of the dangerous condition because it knew of the "potential danger created by its *general distribution* of sanitation wipes at its Store" as opposed to the danger created by the particular wipe upon which the plaintiff slipped. *Id.* at 4. The plaintiff had offered evidence that a prior slip and fall occurred at the same store, on the same type of sanitation wipe, which was similarly dropped on the ground by a third-party customer and that the defendant's employees discussed the safety hazard resulting from sanitation wipes that were not properly discarded at a safety meeting. *Id.* at 5. Thus, the Court did not hold that the defendant had constructive knowledge because the dangerous condition existed for twenty-four seconds; rather, the Court found the defendant had constructive knowledge because it knew prior to the child dropping the sanitation wipe that distributing sanitation wipes in general created a potential danger. *Id.*

Here, Plaintiff has not pointed to any evidence susceptible to a reasonable inference that Defendant had constructive knowledge of the spilled ice/water, such as similar incidents involving slip-and-falls due to spilled ice or water, safety meetings regarding spilled ice or water, or evidence that Defendant's employees were required or should have been in the area during the time Plaintiff fell. *See* Oppo. Also, as discussed above, Plaintiff fails to point to any evidence suggesting Defendant had actual or constructive knowledge that its policies, the location of the ice house, the safety mats, or the floor itself would result in slip-and-falls resulting from spilled ice or water.

The undisputed evidence establishes that the spilled ice and water was on the floor for four minutes before Plaintiff's fall. Doc. No. 19-3, Exhibits 2-3. The undisputed evidence also establishes that Clerk Wilson conducted a sweep sixteen minutes before the spill and twenty minutes before Plaintiff's fall, and that the 5th Key Manager conducted an inspection thirteen seconds before the spill and four minutes before Plaintiff's fall. Doc. No. 19-3, Exhibits 2, 4; Belcher Decl. at ¶¶ 9-13.

1 Based on these facts, the Court finds as a matter of law that Plaintiff's negligence
2 and premises liability actions fail because a store owner's inspection within four minutes
3 of the fall does not constitute a breach of the duty of care. *See Ortega*, 26 Cal. 4th at
4 1211 (noting that "if a store owner has taken care in the discharge of its duty, by
5 inspecting its premises in a reasonable manner, then no breach will be found even if a
6 plaintiff does suffer injury"); *see also Alacan v. Target Corp.*, No. CV 14-04564-AB
7 (VBKx), 2015 WL 10945603, at *3 (C.D. Cal. June 26, 2015) (finding that a "store
8 owner's inspection within 7 minutes of the fall does not constitute a breach of the duty of
9 care"); *Barta v. Target Corp.*, No. SACV 16-00786 AG (DFMx), 2017 WL 6551145, at
10 *5 (C.D. Cal. Sept. 13, 2017) (finding that a reasonable jury could not find that a wipe
11 being on the floor for five and a half minutes is enough to give the defendant constructive
12 notice of it); *See De Paz v. Northgate Gonzalez Mkts., Inc.*, No. B278586, 2017 WL
13 4937721, at *5-6 (finding the defendant did not breach its duty of care where it
14 completed five inspections within the hour that the plaintiff fell, one of which was
15 completed roughly twenty five minutes prior to the fall and one which was ongoing
16 during the plaintiff's fall or which was completed just before the fall); *Eidem v. Target
17 Corp.*, No. EDCV 10-01000 VAP(DTBx), 2011 WL 3756144, at *9 (C.D. Cal. Aug. 24,
18 2011) (finding the defendant exercised due care where it inspected the area where the
19 plaintiff fell fifteen minutes before the fall).

20 Further, under the circumstances of this case, four minutes is insufficient to
21 establish constructive notice. *See Rabbani v. Trader Joe's Co.*, No. B256819, 2015 WL
22 6122242, at *5 (Cal. Ct. App. Oct. 16, 2015) (indicating that soup on the floor for "two to
23 three minutes before Plaintiff's fall" is "insufficient to establish constructive notice");
24 *Girvetz v. Boys' Market*, 91 Cal. App. 2d 827, 828 (Ct. App. 1949) (stating that one and a
25 half minutes was insufficient to support an inference that the defendant failed to exercise
26 the care required of it); *Oldenburg v. Sears, Roebuck & Co.*, 152 Cal. App. 2d 733, 745
27 (Ct. App. 1957) (stating that "the dangerous condition [would not have] existed long
28 enough for the defendant, in the exercise of reasonable care, to have discovered and

16cv2614-MMA (MDD)

removed" the dangerous condition where it had been on the sidewalk for as little as five minutes); *Simril*, 2017 WL 2999031, at *3 (finding "just over one minute" insufficient to support a finding of constructive notice).

The Court recognizes that "the exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, but varies according to the circumstances." *Girvets*, 91 Cal. App. 2d at 831. However, this ruling is consistent with the rulings of California courts and Federal district courts applying California law.

<u>CONCLUSION</u>

For the reasons set forth above, the Court finds that there is no genuine dispute as to any material fact and that Defendant is entitled to judgment as a matter of law. As such, the Court **GRANTS** Defendant's motion for summary judgment. This order disposes of all claims. Accordingly, the Court **ORDERS** the Clerk of Court to enter judgment in favor of Defendant and to terminate the case.

**IT IS SO ORDERED**.

Dated: May 1, 2018

Hon. Michael M. Anello
United States District Judge

16cv2614-MMA (MDD)